**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Jacob Robbins,

      Plaintiff,

v.

County of Pima, et al.,

      Defendants.

No. CV-23-00362-TUC-AMM

**ORDER**

On February 4, 2026, Magistrate Judge Eric J. Markovich issued a Report and Recommendation ("R&R") recommending this Court grant Defendant Pima County's Motion for Summary Judgment. (Doc. 60.) The motion is fully briefed, and the Magistrate Judge heard argument on January 29, 2026. (Docs. 49–50, 53–54, 57, 59.) Plaintiff Jacob Robbins timely objected to the R&R, and Pima County responded. (Docs. 61, 64.) For the reasons discussed herein, the Court will adopt the R&R in part and reject it in part.

## I.    BACKGROUND

Robbins brings this employment dispute against Pima County alleging it discriminated against him by failing to reasonably accommodate his disability and deprived him of his property interest in his continued employment. (Doc. 1.) He brings his claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–709, and the Fourteenth Amendment's Equal Protection and Due Process Clauses through 42 U.S.C. § 1983. (*Id.* at 6–10.)

Robbins worked as a corrections officer at the Pima County Sheriff's Department

("PCSD") from 2006 to 2020. (Defendant's Statement of Facts ("DSOF"), Doc. 50 ¶ 1; Plaintiff's Statement of Facts ("PSOF"), Doc. 54 ¶ 55.) In 2020, PCSD promoted Robbins to a corrections sergeant. (DSOF ¶ 2.) It is undisputed that Robbins has cerebral palsy, a disability that Pima County was aware of throughout his employment. (*Id.* ¶ 3; PSOF ¶ 56.) Despite his disability, Robbins had not previously sought an accommodation. (PSOF ¶ 56.)

In response to the COVID-19 pandemic, Pima County released an October 21, 2021 memorandum requiring employees working with "vulnerable populations" to receive the COVID-19 vaccine. (DSOF ¶ 4; PSOF ¶ 57.) PCSD determined that corrections personnel working in detention centers, such as Robbins, worked with vulnerable populations and were therefore required to be fully vaccinated. (*See* DSOF ¶ 5.) Pima County subsequently issued a statement advising that employees with a medical condition that prevented them from being vaccinated could receive an accommodation. (*Id.* ¶¶ 8–9.)

On November 5, 2021, Robbins contacted Pima County Human Resources ("HR") to ask about the accommodation process, and HR sent him ADA accommodation paperwork the same day. (*Id.* ¶ 10.) HR followed up with Robbins in December 2021 to inquire whether he intended to seek a workplace accommodation. (*Id.* ¶ 11.) On December 15, 2021, Robbins submitted the ADA paperwork to HR indicating that he was medically unable to receive the COVID-19 vaccine and requesting an accommodation. (*Id.* ¶ 12; PSOF ¶ 81.) The request specified that Robbins wanted "reassignment to any of the positions for Corrections Sergeants in PCSD headquarters," which would allow him to "remain in his pension program." (PSOF ¶ 82.) Robbins's corrections sergeant compensation rate at this time was $29.25 per hour. (*See* Doc. 50-1.)

The next day, Pima County found Robbins eligible for accommodation and thereafter initiated the interactive accommodation process. (DSOF ¶ 13; PSOF ¶ 83.) In mid-December, HR spoke with PCSD about whether Robbins could be reassigned to PCSD headquarters. (PSOF ¶ 84.) Specifically, PCSD Lieutenant Christy Anderson testified that she spoke to Emily Kruspig, nurse liaison for HR, and Lieutenant Anderson told Kruspig that there were no positions available at headquarters to be filled by a corrections sergeant

at that time. (Doc. 50-12 at 7–8.) Lieutenant Anderson further stated a corrections sergeant assigned to the jail could not "just be physically working" at headquarters while being assigned to the jail. (*Id.* at 8.) She explained that "if something happens at the jail, they have to go to the jail, [be]cause that's where the work is." (*Id.*) Notably, neither employee documented this conversation. (*See* PSOF ¶ 86.) Pima County contends that because the corrections sergeant position requires regular contact with vulnerable populations, no accommodation would allow Robbins to continue in that position and "reappointment" was the "only option left to accommodate" him. (DSOF ¶¶ 17–18.) Robbins disputes this statement, pointing to multiple corrections sergeants working outside the detention center or jail during that time. (Plaintiff's Response to DSOF ("PRSOF"), Doc. 54 ¶ 18.) Pima County acknowledges that, at the time Robbins submitted his ADA paperwork, there were four positions filled by corrections sergeants outside the detention center: three at PCSD headquarters and one at the training center. (DSOF ¶ 26.) The three corrections sergeant positions at headquarters included one personnel position and two internal affairs positions. (*Id.* ¶ 27.)

Thereafter, on January 3, 2022, HR began searching for a reappointment position for Robbins. (*Id.* ¶ 19.) HR sent Robbins weekly job summaries of Pima County's open positions from January 7, 2022 until February 25, 2022. (*Id.*) In mid-January, Robbins contacted PCSD about reappointment and discovered HR had not yet contacted them regarding the interactive process.[1] (*Id.* ¶ 20; Doc. 50-19.) PCSD subsequently identified four positions available for Robbins to apply for, one of which was a 911 Dispatcher. (DSOF ¶¶ 21–22.) While Robbins tested for this position, he was unable to qualify. (*Id.* ¶ 23.)

During this time, Robbins learned that Sergeant Manny Hernandez, a fellow corrections sergeant, was reassigned to PCSD headquarters to work on a new body worn camera project. (*Id.* ¶ 24; PSOF ¶ 92.) It is unclear when this project was created and filled by PCSD. Pima County asserts inconsistently that the position "did not exist" in December

---

[1] The identity of the person at PCSD whom Robbins contacted is unknown.

2021 but also that it was "created and filled in late 2021/early 2022." (DSOF ¶¶ 28, 48–49.) Hernandez, like Robbins, was unable to be vaccinated due to a medical condition, however there is no record that Hernandez went through the accommodation process, only that he faxed HR information indicating he could not receive the COVID-19 vaccine on January 3, 2022. (DSOF ¶ 50; PRSOF ¶ 50; PSOF ¶ 93.) When Robbins contacted PCSD to inquire about Hernandez's reassignment, HR explained that Hernandez filled the position based on PCSD's "specific needs" and "[s]taff are not always privy to the decisions of management or why an employee was selected or not for an internal reassignment." (DSOF ¶¶ 24, 32.) HR confirmed that Robbins's accommodation request had not been denied and that "reappointment" was the accommodation offer. (*Id.* ¶ 32.) Shortly after this, another corrections sergeant position at headquarters (in the personnel unit) opened in early February 2022, to which Robbins was likewise not assigned.[2] (PSOF ¶ 98.)

To continue in the accommodation process, Pima County extended Robbins's unpaid medical leave for an additional two weeks until March 4, 2022. (DSOF ¶ 33; Doc. 50-29; Doc. 54-3.) Robbins informed HR that his salary cutoff for a new position was $24 per hour. (*Id.* ¶ 33.) On March 8, 2022, Pima County offered Robbins a position as Program Coordinator within the Central Human Resources Department. (DSOF ¶ 35.) Robbins requested an increase in the position's starting pay, and HR sought and was approved to offer $25.69 per hour (a five percent raise over the starting salary). (*Id.* ¶¶ 36–37; Doc. 54-35.) Robbins accepted the position on March 10, 2022, and he began working as a Program Coordinator on March 14, 2022. (DSOF ¶¶ 38–39; PSOF ¶ 111.)

Although Robbins was hired to be a Program Coordinator for Occupational Medicine, HR placed him in the Leave Administrative Unit because that unit had other employees available to mentor him. (DSOF ¶ 40.) One of Robbins's supervisors, Jason

---

[2] While Pima County contends this corrections sergeant position was never vacant, (Doc. 64 at 9), the Court construes this fact in the light most favorable to Robbins. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (holding on a motion for summary judgment, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the'" nonmoving party (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))).

Parrish, stated that Robbins communicated to him that Robbins was pleased to be working with former PCSD employee Doreen Press, who had previously helped Robbins with leave requests. (*Id.*) Parrish further stated that, during this time, Robbins regularly stopped by his office to discuss the position and Robbins's life and consistently answered positively. (*Id.* ¶ 41.) However, Robbins disputes this fact to the extent it misrepresents that, while he was pleased to be working with Doreen Press, he was not satisfied with the "overall accommodation process" nor did he approve of the reassignment. (PSOF ¶¶ 40–41.) During this time, Robbins indicated to HR coworkers that he did not intend to stay in the Program Coordinator position and was getting a job at the Pinal County Department of Corrections. (DSOF ¶ 41.) Robbins's last day in the office was March 31, 2022, and he exhausted his leave through April 15, 2022. (*Id.* ¶ 42.) On April 15, 2022, Robbins emailed his resignation to his supervisors. (*Id.* ¶ 43.) In his resignation email, Robbins thanked them for their "help throughout the last month." (*Id.*; Doc. 50-31.)

Robbins asserts that "[a]lthough [he] technically 'resigned' . . . he felt compelled to do so because the new position did not match his background, training[,] or experience, and that the reassignment did not feel like a true accommodation but rather a way to move him out of his prior career track, and that he did not feel welcome." (PSOF ¶ 115.) Robbins argues he was "constructively discharged" on April 15, 2022. (*Id.* ¶ 116.) Because of this, Robbins filed an administrative claim with the Equal Employment Opportunity Commission ("EEOC") and the Arizona Civil Rights Division ("ACRD").[3] (DSOF ¶ 54.) Robbins's administrative claim included a discrimination claim for failure to accommodate but did not include retaliation or failure to rehire claims. (*Id.*; Docs. 54-15.) In his EEOC claim, Robbins asserted Pima County's failure to reassign him to a comparable position resulted in his pay decreasing by between $5 and $10 an hour and his pension not transferring, thereby pushing back his retirement 10 to 15 years. (Doc. 50-37 at 3.)

///

---

[3] Robbins signed his EEOC claim on February 22, 2022, and the EEOC received it on March 8, 2022. (Doc. 50-37.) Robbins signed his ACRD claim on April 27, 2022. (Doc. 50-38.)

## II.    LEGAL STANDARD

### a.  Report and Recommendation

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court considers de novo only objections which are specific. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (the Court reviews de novo those portions of the R&R to which specific objection is made); Fed. R. Civ. P. 72(b)(2) (requiring objections be "specific [and] written"). The Court reviews portions of the R&R that are not objected to for clear error. *See Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012). However, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). A district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. § 636(b)(1)(C).

### b.  Summary Judgment

A court may grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is genuine when the disputed fact "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

## III.   DISCUSSION

The Magistrate Judge found Robbins failed to make a prima facie case of discrimination under the ADA or the Rehabilitation Act. (Doc. 60 at 29.) Specifically, the

Magistrate Judge found that Robbins was not a "qualified individual," and Pima County engaged in the interactive process in good faith resulting in Robbins receiving the reasonable accommodation of reassignment. (*Id.* at 28.) The Magistrate Judge further found no evidence exists to support an Equal Protection or Due Process violation because Robbins resigned and voluntarily relinquished any protected interest. (*Id.* at 29–32.)

Robbins objects to the Magistrate Judge's findings that (1) no headquarter positions were "vacant" and available for reassignment, (2) the interactive process and accommodation were reasonable, and (3) he was not constructively discharged in violation of the Due Process Clause. (Doc. 61 at 2–10.) The Court addresses Robbins's objections in turn.

### a. A genuine dispute exists as to whether Pima County failed to reasonably accommodate Robbins in violation of the ADA and Rehabilitation Act.

Robbins's discrimination claim asserts Pima County failed to engage in a good faith interactive process when it did not consider him for the corrections sergeant positions at headquarters. (*See* Doc. 1.) An employer discriminates by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A). "To establish a prima facie case for failure to accommodate under the ADA, [a plaintiff] must show that '(1) []he is disabled within the meaning of the ADA; (2) []he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) []he suffered an adverse employment action because of [his] disability.'" *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003)). Significantly, the burden of establishing a prima facie case is not onerous. *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). At the summary judgment stage, the "requisite degree of proof necessary to establish a *prima facie* case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id*. (citing

*Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994)).

### i. **A genuine dispute of material fact exists as to whether Robbins is a "qualified individual."**

As a threshold matter, the Magistrate Judge found Robbins's inability to be vaccinated made it impossible for him to work in his current position as a corrections sergeant and therefore he was no longer a "qualified individual." (Doc. 60 at 20.) The Magistrate Judge reasoned that because Robbins was assigned to the detention center, which required work with vulnerable populations, being vaccinated was necessary for him to meet the "job-related requirements" of that position. (*Id.* at 18–19.) While Robbins does not object to this finding, (*see* Doc. 61), the Court nevertheless finds that a genuine dispute exists as to whether working with vulnerable populations was an essential function of all corrections sergeant positions, and, in the alternative, whether reassignment could enable Robbins to perform the essential functions of a different position.

A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Ninth Circuit established a two-step inquiry to determine qualification for a position: the court first considers whether the individual satisfies the "'requisite skill, experience, education and other job-related requirements' of the position," and then considers "whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (first quoting 29 C.F.R. § 1630.2(m); then quoting 42 U.S.C. § 12111(8)). A person can be a "qualified individual" if he "can 'perform the essential functions of a reassignment position, with or without reasonable accommodation, even if [he] cannot perform the essential functions of the current position.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 959 (9th Cir. 2013) (quoting *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006)).

It is undisputed that there were five corrections sergeant positions assigned outside the detention center or jail setting at the times relevant to the accommodation process.

(DSOF ¶¶ 26–27; Doc. 54-1 at 4.) Robbins presents sufficient evidence to establish that at least one of those corrections sergeants—Corrections Sergeant Hernandez—also could not receive the COVID-19 vaccine for medically related reasons, but he was nevertheless allowed to remain in the "corrections sergeant" position with reassignment to headquarters. (*See* DSOF ¶ 24; PSOF ¶¶ 92–93.) Because evidence exists that corrections sergeants worked outside the detention center without exposure to vulnerable populations, the Court finds the Magistrate Judge construed the position too narrowly. (*See* Doc. 60 at 18–20.) The Court further notes the Magistrate Judge's analysis considers the COVID-19 vaccine requirement as a "step-one" job-related prerequisite, such as the requisite bachelor's degree in *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123 (9th Cir. 2020). (*Id.*) However, given that corrections sergeants could receive an accommodation to avoid this requirement, the Court finds the vaccine requirement is more appropriately considered in the "step-two" inquiry as relevant to the essential functions analysis. This distinction is material because accommodation is not considered until step two. *See Johnson v. Bd. of Trs. of Boundary Cnty. Sch. Dist. No. 101*, 666 F.3d 561, 565 (9th Cir. 2011) ("[T]he first step of the qualification inquiry, unlike the second step, contains no reference to reasonable accommodation.").

Here, the fact that Corrections Sergeant Hernandez was permitted to retain his position as a "corrections sergeant" notwithstanding his inability to receive the COVID-19 vaccination precludes this Court from adopting the Magistrate Judge's finding that Robbins is not a qualified individual based solely on his inability to receive the COVID-19 vaccination. Notably, Pima County failed to meet its burden of establishing the essential functions of a corrections sergeant position. *See Bates*, 511 F.3d at 991 ("Although the plaintiff bears the ultimate burden of persuading the fact finder that he can perform the job's essential functions . . . 'an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions.'" (quoting *EEOC v. Wal–Mart*, 477 F.3d 561, 568 (8th Cir. 2007))). As such, Robbins presents sufficient evidence to create a genuine issue of material fact as to whether working

- 9 -

with vulnerable populations in the detention center (triggering the COVID-19 vaccination requirement) was an "essential function" of the corrections sergeant position.

Moreover, even if working with vulnerable populations was an essential function of a corrections sergeant position, a genuine dispute exists as to whether reassignment could enable Robbins to perform the essential functions of another position. Pima County arguably determined he was able to perform the essential functions of a "Program Coordinator" by reassigning him to that position. (*See* DSOF ¶¶ 39–41.)

Construing these facts in the light most favorable to Robbins, it appears he was a "qualified individual," even if reassignment was necessary for him to be able to perform the essential functions of the position. *See Scott*, 550 U.S. at 378. Accordingly, the Court declines to adopt the Magistrate Judge's finding as to this issue and finds a genuine dispute exists at to the material fact of whether Robbins was a qualified individual.

### ii. **A genuine dispute of material fact exists as to whether Pima County properly considered Robbins for the available corrections sergeant positions in its interactive process.**

The Magistrate Judge further found that Pima County engaged in a good faith interactive process and provided Robbins with reasonable accommodation. (Doc. 60 at 20–29.) Robbins objects to the Magistrate Judge's finding that no headquarter positions were "vacant" and available for reassignment and that the interactive process and accommodation were reasonable. (Doc. 61 at 2–8.) The Court finds that a genuine dispute exists as to whether Pima County properly considered Robbins for the available corrections sergeant positions at headquarters in its interactive process. Summary judgment is, therefore, not appropriate.

"The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). "Whether an accommodation is reasonable 'depends on the individual circumstances of

each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the [potential] accommodations.'" *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 799 (9th Cir. 2017) (quoting *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010)). While reassignment to a vacant position may be a form of reasonable accommodation, *see* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), "[r]eassignment is a last resort to be utilized only if the employee cannot be reasonably accommodated in his or her existing job," *Ransom v. State of Arizona Bd. of Regents*, 983 F. Supp. 895, 900–01 (D. Ariz. 1997) (citing 29 C.F.R. § 1630.2(o)).

From the start of the accommodation process on December 15, 2021, Robbins requested to stay in his role as a corrections sergeant and specifically requested to work at headquarters. (PSOF ¶ 82.) Robbins contends this accommodation would have allowed him to maintain his sergeant status, pay, and pension benefits. (*Id.*; *see* Doc. 50-37 at 3.) During the accommodation period, Robbins identified two corrections sergeant positions that became available at headquarters: the body worn camera position in either "late 2021/early 2022" and the personnel position in February 2022.[4] (DSOF ¶¶ 28, 48–49; PSOF ¶¶ 92, 98.) Despite Robbins's specific request and these arguably available positions, no evidence exists that Pima County meaningfully considered Robbins for these positions. Instead, it appears Pima County rejected reassigning Robbins to a corrections sergeant position and only considered reassigning him to different and lesser paying positions.

While Pima County asserts that no corrections sergeant positions were "open" at the beginning of the interactive process, employers are under a "continuing duty" to determine reasonable accommodation. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001). Further, as the Ninth Circuit established, "in considering reassignment as a reasonable accommodation, an employer must consider not only those contemporaneously available positions but also those that will become available within a reasonable period." *Dark*, 451 F.3d at 1089–90.

It is undisputed that Pima County filled two corrections sergeant positions at

---

[4] As noted above, while Pima County argues these positions were never vacant, the Court construes this disputed fact in the light most favorable to Robbins.

headquarters during Robbins's accommodation period. Robbins's allegation that Pima County failed to consider him for these positions raises a genuine issue of material fact as to whether Pima County engaged in good faith in the interactive process. *Id.* at 1082 n.2, 1090 n.7 (explaining that although a "nonmoving party may not rest upon the mere allegations or denials in the pleadings," a plaintiff's allegation that positions became available sometime within a five-month period after his termination did not require "any greater specificity" to raise a genuine issue of material fact (first citing Fed. R. Civ. P. 56(e); then citing *McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1115 (9th Cir. 1999))).

Viewing the evidence in the light most favorable to Robbins, a genuine issue of material fact exists concerning whether Pima County meaningfully engaged in the interactive process and considered Robbins's individualized request for accommodation. As such, summary judgment is precluded as to Robbins's failure to accommodate claims. *See Anthony*, 955 F.3d at 1134 ("[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002))).

### b. Pima County did not deprive Robbins of a protected interest when he voluntarily resigned from his position.

Lastly, Robbins objects to the Magistrate Judge's finding that he was not constructively discharged in violation of the Due Process Clause. (Doc. 61 at 8–10.) Robbins contends that the Magistrate Judge improperly resolved the "fact-intensive" constructive discharge analysis as a matter of law. (*Id.* at 9.) He asserts that "[w]here the record supports competing inferences about whether conditions were intolerable and whether resignation was compelled, constructive discharge is typically a jury question." (*Id.*) As support for his "intolerable conditions," Robbins offers "[c]ircumstantial evidence that [he] reasonably believed his continued employment path was being foreclosed,"

"[a]ccommodation-process missteps," and "loss of pension." (*Id.* at 10.)

The Due Process Clause establishes that an employee's "constructive discharge" may deprive him of a protected interest in his continued employment where the employee "resigned due to intolerable working conditions" or "coercion." *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004) (citation omitted)).

Here, Robbins presents no evidence that a reasonable jury would find his new position intolerable or that Pima County coerced his resignation. On the contrary, the evidence shows Robbins negotiated and was granted a more-competitive starting pay, communicated he was pleased to be working with Doreen Press, frequently stopped by his supervisor's office to talk, and thanked his supervisors in his resignation email. (DSOF ¶¶ 36–37, 40–43.) The undisputed facts do not support the conclusion that Robbins was constructively discharged. Accordingly, Pima County is entitled to summary judgment because a reasonable jury could not find that Robbins is entitled to a favorable verdict on his due process claim. *See Anderson*, 477 U.S. at 248.

## IV.    CONCLUSION

The Court has reviewed the Magistrate Judge's R&R (Doc. 60), Robbins's Objections (Doc. 61), Pima County's Response (Doc. 64), Pima County's Motion for Summary Judgment and Statement of Facts (Docs. 49–50), Robbins's Response and Controverting Statement of Facts (Docs. 53–54), Pima County's Reply (Doc. 57), Robbins's Complaint (Doc. 1), and Pima County's Answer (Doc. 10). Upon a de novo review of the objected to portions of the R&R, and clear error review of the unopposed portions, the Court adopts the R&R in part and rejects it in part.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation is **ADOPTED IN PART AND REJECTED IN PART.** (Doc. 60.)

**IT IS FURTHER ORDERED** that Defendant Pima County's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. (Doc. 49.) Robbins's Equal Protection and Due Process claims under 42 U.S.C. § 1983 (Claims III and IV) are **DISMISSED**.

Dated this 31st day of March, 2026.

Honorable Angela M. Martinez
United States District Judge

- 14 -